UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DONALD L. REBMAN and YOUNG REBMAN, husband and wife,<br><br>　　　　　Plaintiffs,<br><br>　　　　v.<br><br>JOHNATHAN R. PERRY, M.D.; KADLEC MEDICAL CENTER, a Washington corporation; and JOHN DOE and/or JANE DOE HEALTH CARE PROVIDERS 1-5,<br><br>　　　　　Defendants. | NO. CV-04-5064-EFS<br><br>**ORDER RULING ON DISCOVERY-RELATED MOTIONS** |

　　A hearing was held in the above-captioned matter on April 28, 2006. Plaintiff Donald Rebman was present, along with counsel Richard Eymann and Richard Rogers. Defendant Johnathan Perry was represented by David Thorner, and Jerry Aiken appeared on behalf of Kadlec Medical Center. Before the Court were Plaintiffs' Discovery Motion - Motion Regarding Plaintiffs' Requests for Admission Nos 9-11 (Ct. Rec. 57), Plaintiffs' Discovery Motion - Motion to Strike Expert Witness (Ct. Rec. 60), Plaintiffs' Discovery Motion - Motion to Compel Production (Ct. Rec. 73), Kadlec's Motion for Protective Order Regarding Depositions of Defendant Kadlec Medical Center's Expert Witnesses (Ct. Rec. 83), and Plaintiffs' Motion to Exclude Evidence (Ct. Rec. 87). After reviewing the submitted

ORDER ~ 1

materials and relevant legal authority and hearing from counsel, the Court was fully informed; the Court's rulings are set forth below.

**A.   Plaintiffs' Discovery Motion - Motion to Compel Production (Ct. Rec. 73)**

Plaintiff advised the Court that Kadlec supplemented its responses and that Plaintiffs find the supplementation sufficient. Accordingly, the Court **denies as moot** the motion to compel production.

**B.   Plaintiffs' Discovery Motion - Motion Regarding Plaintiffs' Requests for Admission Nos 9-11 (Ct. Rec. 57)**

Plaintiffs ask the Court to deem Requests for Admission Nos. 9-11 admitted by Kadlec or, in the alternative, to require Kadlec to serve amended answers to these requests. After the filing of Plaintiffs' motion, Kadlec supplemented its response to these Requests. Given the wording of these Requests and in light of Kadlec's concession that it does not have an expert who will provide an opinion as to the issues raised in these Requests, the Court finds Kadlec's responses sufficient. Accordingly, the Court **denies** Plaintiffs' motion.

**C.   Plaintiffs' Discovery Motion - Motion to Strike Expert Witness (Ct. Rec. 60)**

Plaintiffs' motion is granted in part and denied in part. First, Plaintiffs' request to strike Dr. James Malone, M.D. as an expert witness for Kadlec is **denied.** However, the Court grants Plaintiffs a telephonic deposition not to exceed 15 minutes of questioning of Dr. Malone who must give direct and non-argumentative answers to questions asked, including to the following questions: (1) Whether he knows if the standard of care applicable to the nurses at Kadlec Medical Center on June 1, 2001,

ORDER ~ 2

through June 6, 2001, required them to notify the attending orthopedic surgeon if and when Mr. Rebman developed severe pain in his right leg or foot, and (2) Whether he knows if the standard of care applicable to nurses practicing in eastern Washington in 2001 in a general surgery unit with orthopedic patients required the nurses to not simply chart abnormalities consistent with a vascular injury but to also tell the doctor of those abnormalities.

This deposition is without further payment of fees to Dr. Malone by Plaintiffs. The Court finds that the original deposition of Dr. Malone was unduly lengthy due in part to the tone of Mr. Rogers and in larger part to the non-responsive and argumentative answers of Dr. Malone. The Court will consider all practical sanctions against either or both if either repeats the conduct.

**D.   Plaintiffs' Motion to Exclude Evidence (Ct. Rec. 87)**

Plaintiffs ask the Court to exclude specific evidence at trial pursuant to Federal Rules of Evidence 104, 403, and 702. Defendants contend this evidence is relevant and admissible and the jury should be allowed to weigh the conflicting evidence.

The Court reserves ruling on several of the exclusion requests. First, the Court finds there is no scientific basis on the current record to support an opinion that a non-contrast CT has the ability to show an injury or tear to the popliteal artery. However, the Court will allow the parties to submit deposition transcripts to show what opinions Plaintiffs' experts hold in this regard **within two weeks** of the hearing.

The Court also **reserves ruling** on whether Dr. Wong may testify that an arteriogram performed on June 1, 2001, through June 6, 2001, had a 17

ORDER ~ 3

to 20 percent chance of not showing a vascular injury even if Mr. Rebman had a vascular injury. **Within two weeks** of the hearing, literature and/or another basis must be presented to this Court to support this opinion of Dr. Wong.

Prior to ruling on whether Dr. Stannard may testify that vascular surgery performed on June 1, 2001, through June 6, 2001, would not have avoided Mr. Rebman's amputation, the Court will review Mr. Stannard's Rule 26(a)(2)(B) report and deposition testimony; accordingly, the motion is **reserved in part**. However, the Court **grants** the exclusion request as to Dr. Malone, given that he is designated only to testify as to the nursing standard of care.

The Court **denies, with leave to renew**, the remaining exclusion requests. The Court finds the expert opinions on the following matters appear to be supported by the respective experts' experience and knowledge, complying with Federal Rule of Evidence 702, as well as Rule 403. Yet, Plaintiffs are given leave to renew such objection at trial:

• testimony that Mr. Rebman's vascular injury did not exist on June 1, 2001, and testimony that Mr. Rebman's vascular injury occurred on June 6, 2001.

• testimony that Mr. Rebman did not suffer a knee dislocation.

In summary, Plaintiffs' Motion to Exclude Evidence is granted in part, denied with leave to renew in part, and held in abeyance in part.

**D. Kadlec's Motion for Protective Order Regarding Depositions of Defendant Kadlec Medical Center's Expert Witnesses (Ct. Rec. 83)**

Kadlec asks the Court for a Protective Order (1) restricting Plaintiffs' counsel from asking Defendant's experts questions outside of

ORDER ~ 4

their identified area of expertise and (2) preventing Mr. Rogers from acting in an unprofessional manner.  The Court **grants** both of these requests.

After a review of the deposition excerpts cited as abusive behavior by Mr. Rogers towards witnesses and counsel, the Court finds that Mr. Rogers engaged in abusive conduct toward both witnesses and counsel in violation of Federal Rules of Civil Procedure 30(d)(1)[1] and (4)[2] and Local Rule 83.2(f)[3].  The Court considers the following conduct by Mr. Rogers to be abusive:

```
Q.   [By Mr. Rogers] What year is your car?
A.   That's a 2000.
Q.   Yeah.  I notice your vanity plates.
     Is that Dr. Raptor or is it D Raptor?
```

---

[1]  Federal Rule of Evidence 30(d)(1) provides:

[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4) [to stop the deposition due to abusive behavior].

[2]  Federal Rule of Evidence 30(d)(4) states:

At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to case forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). . . .

[3]  Local Rule 83.2(f) mandates that each attorney "shall perform with honesty, care, and decorum required for the fair and efficient administration of justice . . . ."

ORDER ~ 5

```
 1        A.    That's actually my wife's car.  It's D Raptor.
          Q.    Why the raptor?
 2        A.    My nickname is Velociraptor because -- remember Jurassic
                Park where they jump?  So my kids and my wife gave me the
 3              moniker of "raptor."
          Q.    I remember in that movie the Velociraptors were the most
 4              vicious animals.  They are the ones that tore people
                apart.
 5        A.    They also learn very quickly, so that's --
          Q.    Do you do both?
 6        A.    No, I do one.  I learn quickly.
          Q.    You're a surgeon.
 7                    Right?
          A.    Correct.  I'm a vascular surgeon.
 8        Q.    So you enjoy performing surgery, obviously.

 9   (Malone Dep. at 5:19 - 6:12.)

10        Q.    [By Mr. Rogers] How do you feel about that, sir?  I'm
                curious about that because I know -- because all I do is
11              medical negligence work.  I know that the American
                Association of Neurological Surgeons, I know the American
12              College of Obstetricians and Gynecologists, just to name
                two, have very strict ethical provisions about how an
13              expert witness comports him and herself in reviewing
                cases and the importance of being true not just to the
14              litigant who's hiring you but to the principles for which
                your practice stands.
15                    So I'm curious how do you feel about --
          A.    I wish the American Trial Lawyers had a similar observed
16              ethical concern.
          Q.    We do.
17
     (Malone Dep. at 39:7-20.)
18
          Mr. Rogers:    Without guessing or speculating.
19        The Witness:   I can't really say that.  I don't know.
          Q    (By Mr. Schroeder)  You don't remember?
20        A.   I don't remember at this time.
          Mr. Rogers:    Well, just a second, did you measure any of the
21                       brush fires?  Did you measure any of the brush
                         fires?
22        The Witness:   No.
          Mr. Rogers:    I'm going to object to the form of the question
23                       as calling for speculation.  It is not a matter
                         of memory.
24        Mr. Schroeder: I ask that you not coach the witness, Counsel.
          Mr. Rogers:    I  object  to  that characterization, my
25                       responsibility and my obligation here is to
                         object whenever I deem an objection is
26                       appropriate, that is what I've been doing, that
                         is what I'm going to continue to do.  It is not
```

ORDER ~ 6

```
                         a matter of coaching, so don't accuse me of
                         that.
     Mr. Schroeder: We will let the record speak for itself.
     Mr. Rogers:    We will.

(Rebman Dep. at 44:13 - 45:6.)

     Mr. Rogers:    I'm going to object, question is argumentative.
                    He has been asked and answered that question
                    numerous times, every time he says less than a
                    mile, you go back and call it a mile.  Are you
                    doing deliberately -- are you trying to provoke
                    all these objections or are you really that
                    forgetful?
     Mr. Schroeder: Thank you for that objection, Counsel.
     Mr. Rogers:    I'm going to allow him to answer your question
                    one more time and then he will --
     Mr. Schroeder: Council [sic].
     Mr. Rogers:    Don't interrupt me.  I'm going to allow the
                    witness to answer your question one more time.
                    So take as much time as you need to formulate
                    the very best question you can on this one
                    point because this is your last time.  And if
                    you have a problem with that, we can suspend
                    the deposition and we can go to the courthouse
                    and you can explain to a judge your difficulty
                    with formulating a question five times after
                    you have asked it and gotten an answer.
     Mr. Schroeder: First of all, Counsel, you are not going to
                    tell me how many times I can ask a question.
     Mr. Rogers:    I believe I just did.  And if you want to --

(Rebman Dep. at 51:6 - 52:1.)

     Mr. Rogers:    So you are refusing to give it now.  I just
                    want to make that real clear.
                         Brilliant lawyering.
     Mr. Aiken.     Thank you.
     Mr. Rogers:    You're welcome.
     Mr. Aiken:     I appreciate it.
     Mr. Rogers:    It's frightfully scary to me.
     Mr. Aiken:     I take that as a compliment.
     Mr. Rogers:    You can take that as a compliment, yes.  I've
                    never seen such brilliant lawyering before.

(Omodt Dep. at 82:17 - 83:1.)

     Mr. Rogers:    Same objection.  You're abusing the witness.
     Mr. Aiken:     Do you feel like I'm abusing you?
     Mr. Rogers:    Doesn't matter whether she feels that way or
                    not.  I'm a lawyer, and I recognize it as abuse
                    and harassment when you serve a subpoena
```

ORDER ~ 7

```
                    requiring she bring with her everything she has
                    reviewed.  She has brought it all with her.
                    And now you are asking her to tell you
                    everything she reviewed when it's all here for
                    you to look at.
```
(Omodt Dep. at 83:23 - 84:8.)

```
   Q.    [By Mr. Rogers] Well, it's a good thing that you came
         along to correct all the flaws.
   Mr. Thorner:    Excuse me, Counsel.  Could you tell us what
                   journal the Varnell article appeared in,
                   please?
   Mr. Rogers:     I figured you would know.  Varnell, that's in
                   the journal entitled The American Surgeon.  I
                   just assume that you read this literature
                   before you got into this case.
```
(Stannard Dep. at 84:9 - 84:18.)

```
   Q.    Do you -- do you believe that someone who is charging
         $2,500 an hour to discuss his opinions in a medical/legal
         case should be prepared to discuss the literature that
         pertains to the injury which is the subject of the
         testimony.
```
(Stannard Dep. at 92:10-15.)

```
   Q.    Again, sir, since you say that you are a $2,500-an-hour
         expert, are you able to tell us today whether or not Dr.
         Treiman and Dr. Yellin in 1992 when they advocated
         selective arteriography, whether they advocated relying
         upon an orthopedists' assessment of pulses to determine
         the need for arteries.  Can you tell us the answer to
         that today.
```
(Stannard Dep. at 128:15-23.)

```
   Q.    Dr. Moneta is the chief of the department of vascular
         surgery at Oregon Health Sciences University in Portland.
         As the chief of that department he has several
         responsibilities, which include overseeing the entire
         department of vascular surgery at that university,
         providing clinical care, vascular surgery care, and
         providing vascular surgeries, and also teaching of
         residents and fellows in the hospital.  His charges are
         $425 per hour.  Yours are 350 per hour for a deposition.
         Can you tell me how you arrive at the fee of $350
         per hour, when a vascular surgeon with the
         responsibilities I described for you charges only
         four and-a-quarter an hour?
   A.    You think I'm less valuable?
```

ORDER ~ 8

```
        Mr. Aiken:      Object to the form.
        Q.   (By Mr. Rogers)  Do you?  Do you think your time is more
             valuable than the time of a board certified vascular
             surgeon, who is in charge of the entire department, has
             clinical responsibilities, and performs vascular surgery
             on patients, as well as teaching, like you do?
```
(Altman Dep. at 34:15 - 35:11.)

    Mr. Rogers is explicitly ordered not to engage in abusive conduct toward counsel or a witness.  The Court sets a hearing without oral argument thirty days after the conclusion of trial or notice of settlement of this case to determine what, if any, sanctions it will impose for this conduct.  The Court will consider the full range of sanctions stated in the Local Rules for the Eastern District of Washington and will take into consideration the occurrence or absence of any further abusive conduct on the part of Mr. Rogers.

    Such a protective order is made necessary both by the conduct of Mr. Rogers and also by the agreement of all counsel to extend the discovery deadline some sixty days to conduct examinations and depositions without first seeking and obtaining court approval for relief from the Court's Scheduling Order. While the parties have placed themselves in a postion where their cases now depend on this agreed extension, this is a flagrant violation of the Court's Scheduling Order and if not contempt, certainly borders on it. At the hearing without oral argument thirty days after the conclusion of trial or notice of settlement of this case, the Court will consider what, if any, sanctions it will impose upon all counsel personally for this intentional and flagrant violation of the Court's Scheduling Order. Scheduling orders are entered only after the Court has obtained the positions of the parties and after examining the Court's calendar in an effort to provide the parties with appropriate time for

ORDER ~ 9

preparation of the case and to provide the Court with control over its calendar in consideration of all of the parties who have cases pending. While scheduling orders are not rigidly and arbitrarily enforced and while relief therefrom is commonly granted upon application of the parties and a showing of good cause, counsel in this case gave greater preference to their schedules than to the Court's Scheduling Order or the Court's calendar. However, while the parties have a critical need to complete discovery during an extended period of discovery having failed to do so during the permitted time period in the Scheduling Order, the parties' stipulated extension of the discovery period must be completed no later than June 9, 2006. The dispositive motion deadline in the Scheduling Order having passed, the parties are prohibited from filing dispositive motions either so titled or disguised as motions in limine. Typical motions in limine may be filed.

Any discovery disputes during this extended period, except for disagreements during depositions which will be handled by telephone as they might occur, will be in person in Richland.  All such disputes will result in the award of terms and costs as appropriate including travel costs.

As set forth above, **IT IS HEREBY ORDERED**:

1.    Plaintiffs' Discovery Motion - Motion to Compel Production **(Ct. Rec. 73)** is **DENIED AS MOOT.**

2.    Plaintiffs' Discovery Motion - Motion Regarding Plaintiffs' Requests for Admission Nos 9-11 **(Ct. Rec. 57)** is **DENIED.**

2.    Plaintiffs' Discovery Motion - Motion to Strike Expert Witness **(Ct. Rec. 60)** is **DENIED IN PART** (Dr. Malone's testimony is not stricken)

ORDER ~ 10

**and GRANTED IN PART** (15 minutes of questioning of Dr. Malone is permitted telephonically).

3.   Plaintiffs' Motion to Exclude Evidence **(Ct. Rec. 87)** is **GRANTED IN PART** (Dr. Malone - re: amputation), **DENIED WITH LEAVE TO RENEW IN PART** (when vascular injury occurred and whether Mr. Rebman did not suffer a knee dislocation), **and HELD IN ABEYANCE IN PART** (all other aspects: counsel have two weeks from the hearing to submit the requested materials).

4.   Kadlec's Motion for Protective Order Regarding Depositions of Defendant Kadlec Medical Center's Expert Witnesses **(Ct. Rec. 83)** is **GRANTED.** A hearing will be held without oral argument thirty days after trial or notice of settlement to determine whether sanctions, and if so what sanctions, should be imposed for Mr. Rogers' conduct during depositions and counsels' failure to seek Court permission to extend the discovery deadline.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this ___1st___ day of May 2006.

                              s/ Edward F. Shea
                              EDWARD F. SHEA
                         United States District Judge

Q:\Civil\2004\5064.discovery.mot.frm

ORDER ~ 11