1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8

DONALD L. REBMAN and YOUNG
REBMAN, husband and wife,

NO. CV-04-5064-EFS

9

                    Plaintiffs,

**ORDER RULING ON POST-TRIAL**

10

          v.

**MOTIONS AND GRANTING A NEW
TRIAL ON THE ISSUE OF NON-
ECONOMIC DAMAGES ONLY**

11
12

JOHNATHAN R. PERRY, M.D.; and
KADLEC MEDICAL CENTER, a
Washington corporation,

13

                    Defendants.

14
15
16
17
18
19
20
21
22
23
24
25
26

     A hearing was held in the above-captioned matter on December 18,
2006.    Richard Eymann and Richard Rogers appeared on behalf of
Plaintiffs; Plaintiff Donald Rebman was present.   David Thorner appeared
on behalf of Defendant Johnathan R. Perry, and Jerry Aiken represented
Defendant Kadlec Medical Center ("KMC").    Before the Court were
Plaintiffs' Motion to Amend or Alter Judgment or, in the Alternative, for
Judgment as a Matter of Law Concerning Past Medical Expenses (Ct. Rec.
252), Defendant Perry's Motion for New Trial (Ct. Rec. 258), and
Plaintiffs' Motion for New Trial on the Issue of Damages Only (Ct. Rec.
267).    After reviewing the submitted materials and relevant legal
authority in light of the Court's prior rulings and trial testimony, the
Court is fully informed; the Court grants a new trial on the issue of
non-economic damages and denies the other relief requested.

ORDER ~ 1

**A.    Motions for New Trial**

Defendant Perry asks the Court to order an entirely new trial due to issues relating to Pamela Dempewolf and Dr. Chau; while Plaintiffs ask the Court to order a new trial on the issue of damages only.   Federal Rule of Civil Procedure 59(a) provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; . . . .

*See also* FED. R. CIV. P. 60(b).   The Court is familiar with the trial testimony and the events that unfolded during the course of trial relating to Pamela Dempewolf, KMC's response to Interrogatory No. 9, and comments made by counsel relating to information precluded by motion in limine rulings; the Court will not repeat these here.

The Court does not find anything during the course of trial or in the jury verdict that requires a need for a new trial due to the materially misleading Interrogatory Response No. 9; there is nothing in this response when compared to the nurses' notes and hospital chart and trial testimony by Nurse Dempewolf that could have affected Dr. Perry's trial preparation or trial arguments.

Dr. Chau's participation in the care of Mr. Rebman is in the chart which was available to all of the parties to the case from the very beginning yet he was not added as a defendant nor was any expert critical of the care that he gave to Mr. Rebman. Accordingly, the sanction for the materially misleading answer was that Nurse Dempewolf's testimony was stricken regarding any conversation she had with Dr. Chau as it was materially different from what she initially told Mr. Aiken and there is

1  no  evidence  that  she  ever  recanted.  At  trial,  her  testimony  was
2  materially  different  from  that  interview.  Defendant  KMC  should  not
3  benefit from providing a materially misleading answer.

4      Each  Defendant  could  have  asserted  negligence  on  the  part  of  Dr.
5  Chau  as  an  affirmative  defense  and  at  trial  asked  for  the  jury  to
6  allocate  fault  to  a  non-party  as  permitted  by  Washington  law.  RCW
7  4.22.070  provides,  "[t]he  entities  whose  fault  shall  be  determined
8  include  the  claimant  or  person  suffering  personal  injury  or  incurring
9  property  damage,  defendants,  third-party  defendants,  entities  released
10 by  the  claimant,  entities  immune  from  liability  to  the  claimant.  . ..."
11 Yet,  neither  the  Defendants  nor  the  Plaintiffs  and  their  respective
12 experts  pointed  to  Dr.  Chau's  care  of  Mr.  Rebman  as  a  cause  of  his
13 injuries.

14     Additionally,  the  Court  finds  unpersuasive  Dr.  Perry's  insistence
15 that  it  was  error  to  fail  to  strike  the  testimony  of  Nurse  Dempewolf
16 because  of  the  following  questions  by  Mr.  Rogers  and  answers  by  Nurse
17 Dempewolf:

18 Q.    [D]id you share with Dr. Perry what you told this jury Dr. Chau had
19       just told you 30 minutes earlier?
20 A.    Yes.
21 Q.    So when Dr. Perry came in at 5:30 on June 6th, you told him what Dr.
22       Chau told you ?
23 A.    No.
24 Q.    You didn't?
25 A.    No. I misunderstood your question.

26

ORDER ~ 3

Q.   So just so we all have this really clear, ...Dr. Perry comes in 30
     minutes later to check on his patient, and you don't tell Dr. Perry
     of the conversation you just had 30 minutes ago with Dr. Chau... Do
     we have that right?

A.   That's right.

(Ct. Recs. 268 at 6, 328 at 3).   There is nothing in that exchange that
required a curative instruction. Any juror would understand that Nurse
Dempewolf did not tell Dr. Perry about the conversation she had with Dr.
Chau. Accordingly, there was no prejudice to Dr. Perry from these
questions and answers and a new trial on this basis alone or considered
together with Dr. Perry's argument about KMC's response to Interrogatory
9, stricken by the Court, that justifies a new trial on all issues. In
addition, the Court does not find the interrogatory response affected
Plaintiffs' trial preparation or strategy; Plaintiffs' trial strategy
from the beginning was that Dr. Perry engaged in malpractice by not
performing an arteriogram to determine if the blood flow to the popliteal
artery was affected.

     Accordingly, after considering the parties' trial strategies, the
testimony presented, the Court's rulings, and the jury verdict, the Court
concludes the verdict imposing liability against Defendants and
apportioning fault is not contrary to the clear weight of the evidence
and does not result in a miscarriage of justice. *See City Solutions,
Inc. v. Clear Channel Comms.*, 365 F.3d 835, 843 (9th Cir. 2004); *Lincoln
Carpet Mills, Inc. v. Singer Co.*, 549 F.2d 80, 82-83 (8th Cir. 1977).
The verdict evinces the jury was able to distinguish between Dr. Perry
and the nurses' respective conduct and to listen to and apply the

causation opinions of the parties' experts.  Given the jury's ability to weigh this evidence, the allocation of liability is best left to the jury.

To set aside a jury verdict, the Court must utilize its independent judgment after examining all of the evidence to determine whether the jury's verdict in whole or in part was against the clear weight of the evidence. *Lincoln Carpet Mills v. Singer Co.*, 549 F.2d 80 (8th Cir.1977). The Court when sitting on a diversity case, as here, must consider state law in determining the issue of the inadequacy of the jury verdict. *Gasperini v. Center for the Humanities, Inc.,* 518 U.S. 415, 437 (1966). Jury verdicts are entitled to respect, particularly awards of non-economic damages. Such verdicts should not be overturned until and unless the Court is convinced that the verdict was the result of passion and prejudice. *RWR Management, Inc. v. Citizens Realty Co.* 133 Wn. App. 265 (Div. III, 2006). Whether the applicable standard is "shocks the conscience of the court" or amounts to "manifest injustice" *Gasperini*, 518 U.S. at 429,430 as in the federal system or whether it is that the verdict was the result of "passion and prejudice", it is met in this case.

Here a Korean-born wife of Mr. Rebman, Young Rebman, sat with her back to the jury and her head down throughout the trial. When testifying, she spoke with an accent and rarely if ever looked at the jury though her testimony was a poignant description of the myriad consequences to she and her husband and their marriage as a result of the amputation of his leg above the knee. An award of $0 is not within the range of the evidence. Her emotional damages, loss of consortium, if you will, was not

contested by any other witness called by either Defendant. The Court can only conclude that on the evidence in this case the jury verdict of $0 non-economic damages to Young Rebman was the product of passion and prejudice and is a manifest injustice.

As to Mr.Rebman, he no longer has a leg below mid thigh. He has a thirty-four year life expectancy. The testimony about his limitations and his difficulty in adjusting to the loss of his leg was graphic and disturbing as was his demonstration of the condition of his stump and the problems he has had and will have for th rest of his life. No reasonable juror unaffected by passion or prejudice could award him only $100,000.00 for the loss of his leg with all of its consequences. This was the Court's immediate reaction to the jury verdict when it was read and the reason why it declined to discuss damages with the jurors. On the testimony in this case, it is the Court's duty to grant a new trial limited to the issue of non-economic damages.

The Court concludes the non-economic damage findings are clearly against the weight of the evidence and are the result of passion and prejudice. *See Conrad v. Alderwood Manor*, 119 Wash. App. 275, 293 (2003). The Court finds the jury's $100,000 non-economic damages award for Mr. Rebman and $0 loss of consortium award inexplicable in the face of the trial testimony on these damages. The trial testimony should have persuaded any reasonable jury, but for one afflicted with passion and prejudice, that Mr. Rebman's non-economic damages were worth more than $100,000. In addition, the Court recognizes that not every injury creates a loss of consortium claim; however, this is a type of injury that does.

ORDER ~ 6

For these reasons, the Court **denies** Dr. Perry's motion and **grants in part** Plaintiff's motion, ordering a new trial on the issue of non-economic damages only.

**B.    Past Medical Expenses**

Plaintiffs ask the Court to amend the jury verdict to award Mr. Rebman past medical expenses of $109,696.81. Plaintiffs submit the parties reached a verbal stipulation that Mr. Rebman's past medical expenses associated with the amputation were $109,696.81. Plaintiffs argue that the jury mistakenly returned a verdict that gave $0 for past medical expenses given that the $504,000 economic damage award matched the testimony by defense expert Daniel Harper for loss of past and future income and future life care costs and services. Defendant Perry concurs with Plaintiff that the jury failed to acknowledge that Mr. Harper's opinion did not include past medical expenses and agrees the Court should increase the economic damage award by $109,696.81. Defendant KMC does not so agree. Defendant Kadlec contends it reached an agreement that past medical expenses in the amount of $109,696.81 were reasonable, but submits it did not agree that such expenses were necessarily proximately caused by Defendants' conduct.

Although the Court concludes the parties reached a stipulated agreement that Mr. Rebman's past medical expenses in the amount of $109,696.81 were reasonable, the Court cannot adjust the economic damages award. Because Plaintiffs and Dr. Perry were unable to point to a specific agreement either in writing or during the course of trial relating to past medical expenses, the Court cannot conclude for certain that the jury's $504,000 economic damage award did not include an amount

for past medical expenses.  Therefore, the Court concludes that granting Plaintiffs' request would constitute impermissible additur.  *See Lariano v. Hobert Corp.*, 170 F.3d 264, 272 (2d Cir. 1999).

For the reasons given above, **IT IS HEREBY ORDERED:**

1.    Plaintiffs' Motion to Amend or Alter Judgment or, in the Alternative, for Judgment as a Matter of Law Concerning Past Medical Expenses **(Ct. Rec. 252)** is **DENIED.**

2.    Defendant Perry's Motion for New Trial **(Ct. Rec. 258)** is **DENIED.**

3.    Plaintiffs' Motion for New Trial on the Issue of Damages Only **(Ct. Rec. 267) is GRANTED IN PART (non-economic damages only).**

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this   25th   day of January 2007.


                          s/ Edward F. Shea
                        EDWARD F. SHEA
                  United States District Judge

Q:\Civil\2004\5064.posttrialmotions.frm

ORDER ~ 8